J-A22043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THADDEUS J. BARTKOWSKI, III & CRYSTAL ANNE CRAWFORD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 432 EDA 2017 |
| KENNETH RAMONDO & THERESE-CECILIA RAMONDO | : | |

Appeal from the Judgment Entered January 27, 2017
In the Court of Common Pleas of Chester County Civil Division at No(s):
2015-05842-RC

| | | |
|---|---|---|
| THADDEUS BARTKOWSKI, III AND CRYSTAL ANNE CRAWFORD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KENNETH RAMONDO AND THERESE-CECILIA RAMONDO | : | No. 521 EDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered January 27, 2017
In the Court of Common Pleas of Chester County Civil Division at No(s):
15-05842

BEFORE:   BOWES, J., LAZARUS, J., and PLATT*, J.

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.:

**FILED JANUARY 22, 2018**

The Ramondos own a parcel of land consisting of two parts: a roughly triangular-shaped parcel, where their home was constructed, together with a twenty-five foot wide and 600 foot long piece of land.  The long, narrow strip

_____
* Retired Senior Judge assigned to the Superior Court.

of land leading from the portion of the real estate that contains their residence accords the Ramondos access to a public road, Garretts Mill Road. That long narrow strip of land is called a pole because it resembles one, and the section of the Ramondos' real estate that contains their home is referred to as a flag because it appears to be a flag atop the long strip of land/pole that leads to the public road. The Bartkowskis likewise own a parcel of land that is called a flag property and consists of two parts, both a flag lot upon which their residence sits and a twenty-five foot wide and 600 foot long strip of land/pole leading from their flag parcel to Garretts Mill Road.

The Ramondos' pole and the Bartkowskis' pole are adjacent to each other. Since 1992, the Ramondos have been using, as their driveway, a portion of the Bartkowskis' strip of land/pole. Specifically, the Ramondos' driveway starts from Garretts Mill Road but, at that point, it is located on the Barkowskis' pole. Approximately one-half way to the flag portion of their real estate, the Ramondos' driveway veers onto their own pole. The Ramondos paved the driveway twice and installed guardrails along one section.

I agree with the learned majority that the Ramondos do not own the portion of the Bartkowskis' pole that the Ramondos have used as their driveway due to application of the doctrine of consentable boundaries. The principle of consentable boundaries alters a boundary line described in the deeds to adjacent properties to a boundary line that the parties have agreed, by their behavior, will be the boundary between their two properties. In this case, the Ramondos are not seeking a new boundary between the two

adjacent poles in question. They want to erase the boundary completely and claim ownership of the entire portion of the Bartkowskis' pole that the Ramondos have used as their driveway since 1992. The consentable-boundary contention herein is nothing more than an adverse possession claim, but the Ramondos cannot claim the Bartkowskis' pole property by virtue of adverse possession since their use of the section of the Bartkowkis' strip of land/pole was with the consent of the prior owners of the Bartkowskis' property.

Nevertheless, I believe that, based upon the record, the trial court committed an abuse of discretion in rejecting the Ramondos' position that they enjoy an easement by necessity over the portion of the Bartkowskis' pole that the Ramondos have utilized since 1992 because the lower portion of their pole that leads to Garretts Mill Road is virtually unusable.

The three fundamental requirements for an easement by necessity to arise are the following:

> 1) The titles to the alleged dominant and servient properties must have been held by one person[;]
>
> 2) This unity of title must have been severed by a conveyance of one of the tracts[;]
>
> 3) The easement must be necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement.

***Youst v. Keck's Food Serv., Inc.***, 94 A.3d 1057, 1075 (Pa.Super. 2014) (citation omitted).

- 3 -

Herein, the Teafs were the common grantors when the two adjacent poles were created, and the land has remained in the same condition. Everyone agrees that the portion of the Ramondos' pole that they do not use as a driveway contains a stream, flood plain, utility pole, and a steep slope. Those conditions led to the Ramondos' use of the part of the Bartkowskis' pole property as a driveway in the first instance. In my view, these conditions on the unused portion of the Ramondos' pole render it virtually impassable. I am aware that an "easement by necessity is always of strict necessity. An easement by necessity never exists as a mere matter of convenience." *Id*. However, the record is clear that such necessity exists herein.

The trial court made the following findings of fact:

33. When the Ramondos constructed the Ramondo Driveway in 1992, they put it in its current location because of a stream, flood plain, steep slope and utility pole, all of which were in place when the Ramondos purchased their property.

34. A utility pole sits just off of Garrett Mill Road in the approximate center of the Ramondos' pole.

35. Ridley Creek flows parallel to Garrett Mill Road across the street from the parties' properties. A stream that flows into Ridley Creek runs through the lower portion of the Ramondos' [strip of land/]pole. The area where the stream runs through the Ramondos' pole is a flood plain.

36. Ridley Creek often floods during storms, and several feet of water can rise onto Garrett Mill Road and the lower portion of the Ramondo [pole]. . . .

37. A PECO utility line that comes from the utility pole (which sits in the Ramondos' pole) runs under the Ramondo Driveway.

. . . .

- 4 -

39. There is a steep slope rising from the Ramondos' [strip of land/]pole up to the [portion of the Ramondos' current driveway that is located on the Bartkowskis' driveway.] The slope is the reason why the Ramondos installed a guard rail.

Trial Court Decision, 9/19/16, at 5-6.

The reports of the parties' expert witnesses established that these various conditions render it necessary for the Ramondos to use the portion of the Bartkowskis' pole that they have used since 1992 as a driveway to access their flag parcel. The Ramondos proffered the report of Daniel Malloy, a civil engineer, who opined that the Ramondos must use the portion of their driveway that is on the Bartkowskis' land to access their own.

Mr. Malloy noted the following. A tributary runs entirely within the Ramondos' pole near Garett Mill Road for about thirty feet. The area around that tributary contains wetlands. Additionally, the unused portion of the Ramondos' pole contains parts that are very steep. Mr. Malloy noted that, in order to use the section of their pole that leads from Garretts Mill Road, the Ramondos would have to relocate or enclose the stream in question, which would require the approval of the owners of the parcel to the west of the driveway, Williston Township, and the Department of Environmental Protection ("DEP"). Mr. Malloy also observed that the stream creates a flood plain extending 500 feet onto the unused section of the Ramondos' strip of land/pole, and construction of a driveway would violate the Township's flood plain ordinance because the ordinance does not allow a flood plain to be filled.

Additionally, Mr. Malloy pointed out that the construction of a driveway on steep slopes is prohibited by the Williston Township's zoning code. Finally, the current location of section of the Ramondos' driveway that is on the Bartkowski pole is the only location that is compliant with the Township Code because a section of that code requires abutting flag lots to utilize a common driveway. Mr. Malloy opined that the regulatory barriers, consisting of the Township and the Department of Environment restrictions, rendered prohibitive the building of a driveway over the unused portion of the Redondos' strip of land/pole linked to Garretts Mill Road.

The Bartkowskis' expert witness, civil engineer Denny L. Howell, P.E., did not state with any degree of certainty that these Township and DEP restrictions could be overcome. He merely stated that a driveway on the unused section of the Ramondos' pole would cost $75,000. Meanwhile, Mr. Howell agreed that, to build a driveway over the unused portion of their own pole, the Ramondos would need relief from the three Township ordinances: those relating to steep slopes, riparian buffer disturbance, and floodplain disturbance and would need DEP clearance regarding the riparian issues. He reported that it would be feasible to obtain relief from the Township and DEP prohibitions from building a driveway on the area of the Ramondos' pole that they have not used as their driveway.

In my view, this opinion was not sufficient to establish that the myriad of zoning and DEP requirements to build the driveway actually could be overcome. Feasible merely means possible. In other words, one can obtain

these variances; however, the key is not whether the Ramondos' could possibly get relief from the Township and DEP restrictions. The critical inquiry is whether it is likely or probable that they will. Stating that the Ramondos "might" be able to obtain variances from three difference Township ordinances and "might" get DEP approval to alter the riparian areas on the unused section of their pole is insufficient to establish that the Ramondos actually can build a driveway over that area.

Both expert witnesses agreed that a driveway cannot be built on the unused section of the Ramondos' pole because it would violate three different Township ordinances and DEP regulations. Mr. Howell never said that those clearances could readily or probably be obtained. Mr. Malloy stated unequivocally that the ordinances and DEP regulations rendered the building of a driveway on that section of the Ramondos' pole prohibitive, in other words, impossible. Thus, in my view, the record admits of no other finding than that the Ramondos cannot build a driveway on the portion of the pole that is not part of their existing driveway. The necessity of the present placement of the Ramondos' driveway is established in the record. Too many Township variances and state regulatory clearances are required to permit a finding that the circumstances at issue herein present merely a question of convenience. Moreover, the necessity existed at the time of severance, given that the steep slope, stream, and flood plain were present on the Ramondos' pole when the Teafs subdivided their property into five lots. Simply put, the Ramondos' flag parcel was and is landlocked unless they can access Garretts

Mill Road by using the portion of the Barkowskis' pole that they have used since 1992. Hence, I dissent.